### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

HUBERT THACKER,                                     Case No. 1:12-cv-545

        Plaintiff,                                 Barrett, J.
                                                    Bowman, M.J.

   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Hubert Thacker filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

Plaintiff filed an application for Supplemental Security Income ("SSI") in March 2008 alleging a disability onset date of December 2001 due to physical and mental impairments.  (Tr. 59-71, 92).  After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  An evidentiary hearing, at which Plaintiff was represented by counsel, was held on May 5, 2010. (Tr. 358-401).  On August 17, 2010, ALJ Christopher McNeil denied Plaintiff's application in a written decision.  (Tr. 12-25).

1

The record on which the ALJ's decision was based reflects that Plaintiff was 46 years old at the time of the administrative hearing.  He has an eighth grade education and past relevant work as a dishwasher/kitchen helper and plumber's helper.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "dysthymic disorder or post-traumatic stress disorder (PTSD), borderline intellectual function, personality disorder NOS, arthritis, and mild chronic right L5 and S1 radiculopathy." (Tr. 14).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work, with the following additional limitations:

> He can occasionally lift no more than 20 pounds, frequently left not more than 10 pounds, push or pull 10 pounds with hand or foot controls, can sit, stand, or walk about 6 hours each in an 8 hour work day, cannot use ladders, ropes or scaffolds, can climb ramps or stairs not more than occasionally, can balance stoop, kneel, crouch, or crawl not more than occasionally; and due to mental limitations, the claimant is able to understand, remember, and carry out only simple tasks in low stress situations in which his duties would be relatively static and changes could be easily explained.

(Tr. 16).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform his past relevant work, he can nonetheless perform jobs that exist in significant numbers in the national economy, including such jobs as housekeeper/cleaner, small products assembler, sedentary assembler and sedentary inspector.  (Tr. 24).  Accordingly, the ALJ determined that

2

Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI.  *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) failing to find that Plaintiff's impairments met or equaled the requirements of Listing 12.05C; 2) failing to provide a hypothetical question to the vocational expert that actually portrayed Plaintiff's impairments; and (3) improperly weighed the opinion evidence.  Upon close analysis, I conclude that Plaintiff's first assignment of error is not well-taken.  However, Plaintiff's second and third assignments of error are dispositive; and based on the errors of the ALJ, this matter should be remanded for further proceedings.

## II. Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."
*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal
quotation omitted).  In conducting this review, the court should consider the record as a
whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence
supports the ALJ's denial of benefits, then that finding must be affirmed, even if
substantial evidence also exists in the record to support a finding of disability.  *Felisky v.
Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because
> substantial evidence exists in the record to support a different conclusion .
> . . . The substantial evidence standard presupposes that there is a 'zone
> of choice' within which the Secretary may proceed without interference
> from the courts.  If the Secretary's decision is supported by substantial
> evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability
benefits, the Social Security Agency is guided by the following sequential benefits
analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial
gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's
impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's
impairments, singly or in combination, meet or equal a Listing in the Listing of
Impairments; at Step 4, the Commissioner determines whether or not the claimant can
still perform his or her past relevant work; and finally, at Step 5, if it is established that
claimant can no longer perform his past relevant work, the burden of proof shifts to the
agency to determine whether a significant number of other jobs which the claimant can

perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

1. *Listing 12.05(C)*

Plaintiff first seeks reversal and an award of benefits under 12.05C. See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C. That particular listing, which pertains to a category of mild mental retardation, states:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports an onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ... C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function.

*Id.*

"Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM–IV, p. 42. "Adaptive functioning" includes the plaintiff's "effectiveness in

areas such as social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)). Mental retardation requires concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM–IV, p. 49.

　　　Prior to 2001, there was some ambiguity as to whether a claimant seeking to meet or equal Listing 12.05C must not only have an IQ score of 60 through 70, but also show "deficits in adaptive functioning" as suggested in the introductory paragraph.1 However, in *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), the Sixth Circuit clarified that a claimant is also required to satisfy the "adaptive functioning" standard. In *Foster*, the plaintiff had dropped out of school after the ninth grade and had two sets of qualifying IQ scores, but the appellate court affirmed the determination that she did not satisfy Listing 12.05 because there was no evidence of deficits in adaptive functioning before age 22, and because the plaintiff's prior work at a bank and a liquor store demonstrated "that she had the ability to perform relatively complicated tasks." *Id.* at 355. Thus, after *Foster*, for a claimant to meet Listing 12.05, he or she "must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations," in addition to the criteria under A, B, C, or D of Section 12.05. *See Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 672, 675 (6th Cir. 2009) (finding that the claimant's adaptive skills were not deficient because she cared for herself and her husband; cooked meals, did laundry, shopped, managed her finances; and took public transportation).

Here, Plaintiff argues that he meets or equals Listing 12.05C on the basis of his qualifying IQ score and evidence of early and current deficits in adaptive functioning, when viewed in combination with his other severe impairments.  The undersigned finds, however, that the ALJ correctly determined that Plaintiff's impairments did not meet or equal the requirements of Listing 12.05C.

### A.  Relevant Evidence and IQ Scores

In July 2004, Plaintiff underwent a psychological consultative evaluation with James Rosenthal, Psy.D. (Tr. 164-168).  Dr. Rosenthal noted that upon testing, Plaintiff obtained a full scale IQ of 65. (Tr. 15, 166, 167).  Dr. Rosenthal further indicated Plaintiff's adaptive skills were estimated to be in the borderline range.  (Tr. 166).  On January 2, 2007, Plaintiff underwent a psychological consultative examination with Richard E. Sexton, Ph.D.  (Tr. 180-184). According to the examiner, Plaintiff's level of intelligence would fall at the low end of the borderline range and appeared to be suffering from a long standing depressive disorder, with observed symptoms in a variety of behavioral, affective and cognitive domains. (Tr. 182).  He was diagnosed with a dysthymic disorder, borderline intelligence and a personality disorder, not otherwise specified. (Tr. 183).

Thereafter, in July 2008, Dr. Leisgang documented that Plaintiff obtained a full scale IQ of 67.  (Tr. 15, 228).  Dr. Leisgang also noted that Plaintiff's IQ score was lower than to be expected based on his clinical presentation, and as such, Dr. Leisgang said that emotional factors may have interfered with Plaintiff's performance on the IQ testing as he appeared to be of borderline intelligence.  (Tr. 15, 228).

The record further indicates that at the administrative hearing, Plaintiff testified that he worked seven or eight years as a plumber's assistant and for some time for a temporary agency and briefly at Kroger as a bagger.  He further testified that he had been married to his wife for about twelve years.  As noted by the ALJ, the record also indicates that Plaintiff is able to perform a range of daily activities including cooking, cleaning, doing laundry, shopping and running errands.  (Tr. 15).  Plaintiff reported that he enjoyed playing video games, used a computer, was able to shop and had regular social contact.  *Id.*

*2.  The ALJ's decision*

The ALJ determined that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria for Listings 12.04, 12.05, 12.06, or 12.08.  (Tr. 15).  In making this finding, the ALJ considered the paragraph B criteria, and determined that Plaintiff had moderate limitation in activities of daily living, social functioning and concentration, persistence or pace.  *Id.*  With respect to Listing 12.05C, the ALJ noted Plaintiff's qualifying IQ scores of 65 and 67 in 2004 and 2008.  The ALJ further noted, however, that both examiners diagnosed borderline intellectual functioning and there was no evidence of mental retardation.  (Tr. 16).  The ALJ then considered the paragraph C criteria and determined that "there is no evidence that Plaintiff is unable to live outside of a highly supportive setting, that he is unable to leave his home, or that even a minimal increase in mental demands would likely result in decompensation.  Accordingly, the ALJ determined that Plaintiff's impairments did not meet or equal the requirements of Listing 12.05C.

8

Notably, Plaintiff asserts that the ALJ's decision is flawed because the ALJ never explicitly stated whether he was accepting the IQ scores as valid, and that he implied the IQ scores are not valid. Plaintiff further argues that the ALJ also did not specifically state whether he found Plaintiff to lack the requisite deficits in adaptive function. Id. Last, Plaintiff contends that the Sixth Circuit has found deficits in adaptive functioning in claimants with similar reports in activities of daily living as Plaintiff. *See Dragon v. Comm'r of Soc. Sec.*, 2012 WL 987758 (6th Cir. March 26, 2012), *Brown v. Secretary of HHS*, 948 F.2d 268 (6th Cir. 1991). As explained below, Plaintiff's contentions are unavailing.

First, the ALJ's decision clearly acknowledged Plaintiff's IQ scores. Although the ALJ noted that both examiners who administered Plaintiff's IQ testing stated that a diagnostic impression of borderline intellectual functioning and noted that emotional difficulties could be a factor in Plaintiff's performance on IQ testing, (Tr. 16), the ALJ's decision clearly recognized Plaintiff's qualifying IQ scores of 65 and 67 in 2004 and 2008 and does not indicate that he questioned the validity of such scores. Notably, in light of Plaintiff's IQ scores the ALJ's decision indicates that he moved to the next factor in the listing analysis and considered the paragraph C criteria and determined that "there is no evidence that Plaintiff is unable to live outside of a highly supportive setting, that he is unable to leave his home, or that even a minimal increase in mental demands would likely result in decompensation.

Next, Plaintiff's attempt to compare himself to the claimants in *Brown* and *Dragon* is also misplaced. In *Brown*, the Sixth Circuit reversed an ALJ's conclusion that a plaintiff did not meet or equal Listing 12.05C based upon his activities of daily living.

9

The Sixth Circuit noted that plaintiff's ability to use public transit and visit friends, ability to make change at a grocery store, limited ability to do laundry and clean his room, completion of the sixth grade, limited reading comprehension, work history and possession of driver's license, all failed to constitute substantial evidence to support the ALJ's rejection of an IQ score of 68.  However, the Court found that "Mr. Brown's biography fits squarely within the DSM–III–R profile of a mildly retarded individual." Brown, 948 F.2d at 270.  Unlike *Brown*, this record contains several psychological opinions that Plaintiff has "borderline intellectual functioning," with no mental health professional offering a different opinion. (Tr. 166, 182-83).

Plaintiff's reliance on *Dragon* is also distinguishable from the record now before the Court. In *Dragon*, the plaintiff's full-scale IQ score of 50 was twenty points lower than Plaintiff's score in this case, suggesting that the claimant was "moderately retarded." However, the ALJ concluded that Dragon did not meet Listing 12.05 after finding that the IQ scores were invalid, because the examiner had noted that they were lower than expected. *Id*. at *3. The Sixth Circuit reversed and remanded for an immediate award of benefits under Listing 12.05.  The appellate court found that *Dragon* had presented "significant" evidence of deficits in adaptive functioning; including similar low IQ scores at age 12 that the ALJ improperly ignored, and a host of other validating school records. The Sixth Circuit held that substantial evidence did not exist to invalidate the IQ scores.

Aside from the fact that the Court was focused on the issue of when an ALJ can invalidate IQ scores, Dragon is distinguishable because there, the plaintiff presented ample evidence of deficits in adaptive functioning.  In addition, unlike *Dragon*, in this case Plaintiff's IQ scores are at the very top of the "mild" retardation range.  Last, while

it is true that the plaintiff in Dragon attempted to work in menial jobs, her work history was far less successful than the Plaintiff in this case.

Plaintiff's failure to meet his burden to show deficits in adaptive functioning is not uncommon, as a broader review of the case law demonstrates. *See generally Carrico v. Comm'r of Soc. Sec.*, 2011 WL 646843 at *9–10 (N.D.Ohio Jan.21, 2011) (R & R holding that claimant showed no adaptive functioning limitations based on past employment history and ability to care for young child, clean, cook, drive, shop, sew, and perform household chores), adopted 2011 WL 680153 (Feb. 16, 2011); *Harris v. Comm'r of Soc. Sec.*, 2010 WL 749654 (S.D. Ohio March 1, 2010) (no evidence that deficits in adaptive functioning manifested before age 22, even though 46 year old claimant in special education classes had limited ability to read, had lived with his mother for most of his life, had never worked a regular job, shopped only with his mother, and did not like to be around people, but was able to do dishes, sweep, and do laundry); *Renn v. Comm'r of Soc. Sec.*, Case No. 1:09–cv–319–SSB, 2010 WL 3365944 (S.D.Ohio, Aug.24, 2010) (remanding on other grounds, but affirming that Plaintiff did not meet Listing 12.05 where IQ score within "mildly retarded" range, but "Plaintiff's daily activities, prior work history, and completion of high school show that she does not have deficits in adaptive functioning."); *Carter v. Comm'r of Soc. Sec.*, supra at *5–6 (affirming based upon evidence showed that the plaintiff had "adaptive skills which had allowed her to be employed in unskilled occupations for many years."); *West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. at 698 (affirming denial of listing where claimant with low IQ scores and diagnosis of borderline intellectual functioning did not show deficiencies in adaptive functioning); *Daniels v. Comm'r of Soc. Sec.*, 70 Fed.

11

Appx. 868 (affirming denial of benefits under Listing 12.05 where claimant had current low IQ score, but psychologist observed she clinically appeared to function at a higher level, and lack of evidence presented by plaintiff coupled with evidence of work history and graduation from high school supported determination that claimant did not exhibit required deficits in adaptive functioning); *see also Foster, supra* (deficits not shown based upon work history).

As in *Hayes*, the record supports Plaintiff's claim that he suffers from subaverage intellectual functioning, but the record also fairly supports the ALJ's conclusion that his functioning falls in the range of borderline intellectual functioning rather than the more severe range of mental retardation. Although some factually similar cases can be found that differ in outcome, here the ALJ's decision therefore falls within the acceptable "zone of choice."

### 2. Evaluation of Plaintiff's RFC

Plaintiff's second and third assignment's of error raise related issues and will therefore be considered together. Specifically, Plaintiff asserts that the ALJ's RFC and hypothetical question failed to properly accommodate Plaintiff's moderate limitations in social functioning and concentration, persistence and pace. Plaintiff also asserts that the ALJ failed to properly weigh the opinion evidence in formulating Plaintiff's mental RFC assessment. The undersigned agrees.

### a. The ALJ's Evaluation of Opinion Evidence Relating to Plaintiff's Mental Impairments.

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the

treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

More weight is generally given to an opinion offered by a medical source who has examined the claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings[.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]" 20 C.F.R. § 404.1527(d)(3). After assessing the weight accorded medical source evidence, ultimately, an ALJ can properly rely on the conclusions of a nonexamining, record reviewing physician to support an RFC assessment. *See Sullivan v. Comm'r of Soc. Sec.*, No. 1:07cv331, 2009 WL 648597, *13 (S.D.Ohio Mar.11, 2009). Such is permissible "because the Commissioner may view nonexamining sources 'as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Id.* (citing Social Security Ruling 96–6p). Opinions offered by nonexamining physicians "are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Id.* (citing 20 C.F.R. § 404.1572(d), (f)). Thus, "under some circumstances, [opinions from nonexamining

doctors can] be given significant weight." *Linton v. Astrue*, No. 3:07cv00469, 2009 WL 540679, *8 (S.D. Ohio Mar 2, 2009).

In this case, no treating source provided an assessment relating to Plaintiff's work-related limitations or opined that Plaintiff is disabled. However, the record contains three assessments from non-examining psychologists who reviewed Plaintiff's medical file and two assessments from consultative psychologists who examined Plaintiff. Notably, Dr. John Waddell, Ph.D., reviewed Plaintiff's medical file on January 25, 2007 and completed a Functional Capacity Assessment for the Bureau of Disability and Determination. (Tr. 193-210). He opined that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace and was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. He also opined that Plaintiff would have moderate difficulties performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 203, 208). Additionally, the non-examining physician found Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting. (Tr. 208).

On August 8, 2008, Dr. Leslie A. Rudy reviewed Plaintiff's psychiatric records and completed a RFC for the Administration. (Tr. 248-265). Dr. Rudy opined that Plaintiff had a moderate degree of functional limitation in the following: restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence or pace. (Tr. 258). Dr. Rudy also opined that Plaintiff had moderate limitations in the following areas: sustaining a normal workday and workweek; interacting appropriately with the general public; accepting criticism from

14

supervisors; getting along with coworkers or peers; maintaining socially appropriate behavior; responding appropriately to changes in the work setting; and setting realistic goals or making plans independently of others.  (Tr. 263).

With respect to the examining psychologists, in 2007, Dr. Sexton conducted a clinical interview and mental status examination of Plaintiff and wrote a detailed report about his findings. (Tr. 180-184).  Notably, Dr. Sexton concluded that Plaintiff would have only "fair" ability to interact with other people (including coworkers and supervisors) and only "fair" ability to tolerate the daily stresses and pressures of the work environment. (Tr. 184).

In 2008, Dr. Leisgang also conducted a clinical interview and mental status examination of Plaintiff, and she administered the WAIS-III and WMS-III (Tr. 225-231). Dr. Leisgang concluded that Plaintiff's ability to relate to others, including fellow coworkers and supervisors, is markedly impaired by his emotional difficulties, and "he may have difficulty relating adequately to others in completing simple repetitive tasks" (Tr. 230). Dr. Leisgang also concluded that Plaintiff would have moderate difficulties in understanding, remembering, and following simple instructions; in maintaining attention, concentration, persistence, and pace; and in withstanding the stress and pressures associated with day-to-day work activity.  (Tr. 230-231).  She opined that Plaintiff may have difficulty retaining simple instructions because of his limited short term memory skills; that his pace may be slowed by his depressive symptomatology; that his attention and concentration skills may deteriorate over extended time periods such that even his performance on simple, repetitive tasks would be slowed; and that the stress of day-to-day work activity may result in increased anxiety and avoidant behavior, decreased

15

attention and concentration skills, interference with Plaintiff's ability to relate adequately to others, and increased symptomatology of depression and/or PTSD, such as crying, withdrawal, and slowed work performance. *Id.*

In formulating Plaintiff's mental RFC, the ALJ gave "great weight" to the opinions of the non-examining psychologists, Dr. Waddell and Dr. Rudy (Tr. 193-210, 248-265) because he believed them to be "based on objective signs and findings, consistent with the credible portion of the activities of daily living evidence, and are not contradicted by any treating source." (Tr. 23). He gave "some weight" to the opinions of consultative examiners Dr. Sexton (Tr. 180-184) and Dr. Leisgang (Tr. 225-231), which were "based on a more limited record," and "some [but less] weight" to Dr. Rosenthal's opinion (Tr. 164-168), "due to the inferior longitudinal record." (Tr. 23). The ALJ explained that, while he afforded some weight to Dr. Sexton's and Dr. Leisgang's findings, he did not adopt the opinion that Plaintiff had "marked" impairments with respect to social functioning (Tr. 23). He explained that Dr. Rudy's rationale on the issue was "sound" (Tr. 23). Moreover, the ALJ stated that he gave more weight to the opinion of Dr. Rudy because he had a superior longitudinal record. (Tr. 23).

Plaintiff argues that the ALJ erred in giving less weight to the opinions of Drs. Sexton and Leisgang, than to the opinions of the non-examining psychologists. Specifically, Plaintiff asserts that the ALJ's stated reasons for affording more weight to the non-examining psychologists and less weight to the opinions of the psychological consultative examiners are not substantially supported. (Tr. 23). The undersigned agrees.

As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D.Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir.2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes*." Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920 at \*4 (6th Cir. Feb, 2, 1999*). See also Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir.1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at \*4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

Here, the ALJ's decision does not clearly explain why he relied on the findings of Dr. Waddell and Dr. Rudy over the findings of Dr. Sexton and Dr. Leisang.  As detailed above, the ALJ simply states that she finds that Dr. Waddell and Dr. Rudy's findings are consistent with the objective evidence, portions of Plaintiff's daily activities found credible by the ALJ, and are not contradicted by any treating source.  The ALJ fails to identify the objective evidence relied upon in making this determination.  Furthermore, the fact that no treating source contradicted these findings does not substantially support the ALJ's decision because the record does not contain any opinion evidence from a treating source.

17

Moreover, the ALJ notes that he was assigning more weight to Dr. Rudy's findings because she had a superior longitudinal record, whereas Dr. Sexton and Dr. Leisgang's findings were "based on a more limited record." The ALJ again fails to provide any additional rationale or cite to any evidence in support of this finding. Notably, Dr. Leisgang examined Plaintiff and provided a thorough assessment relating to Plaintiff's mental impairments on July 7, 2008. (Tr. 225-31). In contrast, Dr. Rudy reviewed the record and completed a mental RFC just one month later in August 2008. Thus, it would appear that Dr. Leisgang and Dr. Rudy's findings were based on a similar record. Finally, there is no indication from the ALJ's decision that he considered the other factors outlined in 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)), including the fact that Dr. Sexton and Dr. Leisgang actually examined Plaintiff.

The undersigned recognizes that it is the duty of the ALJ, and not the Court, to weigh the medical evidence. However, the ALJ's failure to fully and clearly articulate his rationale for the weight given to the opinion evidence prevents this Court from engaging in meaningful review of the ALJ's decision in this regard. *See Hurst*, 753 F.2d at 517; Social Security Ruling (SSR) 82–62. Accordingly, this matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law.

b.  *ALJ's RFC determination*

As noted above, the ALJ determined Plaintiff had moderate limitation in activities of daily living, social functioning and concentration, persistence or pace. In light of Plaintiff' mental impairments, the ALJ's mental RFC and hypothetical question to the vocational expert limited Plaintiff to "simple tasks in low stress situations in which his

duties would be relatively static and changes could be easily explained." (Tr. 397). Citing the Sixth Circuit's recent decision in *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010)  Plaintiff contends, however, that the ALJ's RFC and hypothetical question failed to properly accommodate Plaintiff's moderate limitations in social functioning and concentration, persistence or pace.

In *Ealy*, the Sixth Circuit found that where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, the ALJ's "streamlined" hypothetical omitting those restrictions was insufficient.  *Id.*  Thus, the Sixth Circuit and this court have found that an ALJ's RFC assessment and hypothetical question limiting the claimant to simple, unskilled, routine jobs did not sufficiently account for moderate deficiencies in concentration, persistence, and pace. *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504, 516–17 (6th Cir.2010) (hypothetical question limiting the claimant to simple, unskilled, routine jobs did not sufficiently account for moderate deficiencies in concentration, persistence, and pace). *See also Renn v. Comm'r of Soc. Sec.*, No. 1:09c-v319, 2010 WL 3365944, at *6 (S.D.Ohio Aug. 24, 2010) (holding that, pursuant to *Ealy*, an RFC limiting the plaintiff to simple, routine repetitive tasks, occasional interaction with public, and only routine changes in work setting, did not properly account for the plaintiff's moderate deficits in memory, attention, and concentration).

As detailed above, in his written opinion, the ALJ found Plaintiff had moderate difficulties with concentration, persistence or pace.  However, the ALJ did not ask the VE a hypothetical questions that included these limitations.  Nor did the ALJ include

these limitations in his RFC finding (or explain why he did not do so).[1] Thus, the undersigned finds the ALJ's RFC limitations of "simple tasks" and "low stress situations even in conjunction with "static" duties may not adequately incorporate Plaintiff's medically established moderate deficiencies in concentration, persistence and pace.

Furthermore, the undersigned agrees that the ALJ also failed to accommodate Plaintiff's moderate limitations in social functioning. As detailed above, the ALJ found that Plaintiff has "moderate" limits in his ability to relate to others, yet, the RFC he assigned to Plaintiff does not include any limitations on his interactions with others. (Tr. 16). *See Kapla v. Comm'r of Soc. Sec.*, CIV.A. 12-11010, 2013 WL 765146 (E.D. Mich. Jan. 25, 2013) report and recommendation adopted, 12-11010, 2013 WL 765099 (E.D. Mich. Feb. 28, 2013) (finding that the ALJ should have accounted for Plaintiff's difficulties in social functioning by providing a limitation in the hypothetical and RFC that limits in some manner Plaintiff's interaction with supervisors); *Bradner v. Astrue*, 11-11636, 2012 WL 3030734 (E.D. Mich. July 25, 2012) (remanding case where ALJ found that claimant experienced moderate limitations in social functioning, but did not account for this deficiency by limiting interaction with supervisors, coworkers, or the public); *Elkin v. Astrue,* CIV.A. 09-87-JBC, 2010 WL 1333434 (E.D. Ky. Mar. 30, 2010) (remanding for further proceedings where the ALJ determined that claimant suffered from moderate degrees of difficulty in social functioning, concentration, and persistence. However, the limitations were not included in the questions the ALJ posed to the vocational expert regarding the types of jobs claimant could perform).

---

[1] Notably, Dr. Waddell (one of the reviewing psychologists upon whom the ALJ gave significant weight) specifically opined that Plaintiff should not perform work which required strict time and production quotas and should be limited to work duties which did not change frequently and which could be shown to Plaintiff or explained to him verbally. (Tr. 209).

Thus, even assuming the ALJ properly evaluated the opinion evidence, Plaintiff's RFC fails to accommodate for his impairments as found by the ALJ. Here, the RFC does not include all of the limitations listed by the reviewing psychologists and fails to address his "moderate" limitations in relating to others. Because the ALJ's hypothetical question failed to accurately portray Plaintiff's mental impairments, the vocational expert's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the jobs identified by the VE. *See White v. Commissioner of Social Sec.*, 312 Fed. Appx. 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's physical and mental impairments). Accordingly, that ALJ's decision is not substantially supported and cannot be affirmed as currently written, thereby requiring remand.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. All essential factual issues have not been

21

resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Id.* 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g).

2. On remand, the ALJ be instructed to: 1) properly assess and evaluate the opinion evidence, and provide a clear explanation for the conclusions reached; and 2) re-evaluate whether Plaintiff's mental impairments meet or equal the requirements outlined in Listing 12.05C

3. As no further matters remain pending for the Court's review, this case be **CLOSED**.

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

HUBERT THACKER,                                           Case No. 1:12-cv-545

       Plaintiff,                                        Barrett, J.
                                                          Bowman, M.J.
   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).